IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH DAVIS, #K-60509,            )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )    CASE NO. 10-cv-971-JPG
                                   )
NURSE WAHL, DR. RECTOR,            )
FENTON, DR. SHEPARD, CHRISTINE     )
BROWN, K. DEEN, T. KISRO, S.       )
GODINEZ, WEXFORD HEALTH            )
CARE SERVICES, and ROD             )
BLAGOJEVICH ,                      )
                                   )
        Defendants.

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Joseph Davis, an inmate in Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a twenty year sentence for aggravated kidnaping, along with a concurrent sentence of fifty years for attempted murder. In this Court's order of July 14, 2011 (Doc. 13), Plaintiff's First Amended Complaint (Doc. 7) was stricken and he was given 35 days to file a Second Amended Complaint. Plaintiff filed his Renewed Second Amended Complaint (Doc. 15) on July 19, 2011, and the case is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief
>     may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from

such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

The following summary of facts is taken from Plaintiff's Renewed Second Amended Complaint and the accompanying exhibits (Doc. 15). Plaintiff alleges that on April 20, 2010, he submitted a number of sick call requests, seeking medical attention for "continued, severe,

chronic and excessive bleeding from his rectum during each bowel movement" (Doc. 15, p. 2). He informed Defendants Wahl, Rector, and Shepard of his condition, and was told that follow up would be done. Plaintiff claims he was not "thoroughly examined" at that time. Plaintiff's problems continued for some months "without any genuine treatment," and he continued to experience "chronic excruciating pain and blood streaming from his rectum" each time he attempted a bowel movement or passed gas (Doc. 1, p. 2). He filed a written grievance with Defendants Kisro and Deen, which was denied.

Plaintiff states he saw Defendant Wahl again on August 12, 2010,[1] and was told by her that he only had "gas" and did not need to see a doctor (Doc. 15, p. 3). Plaintiff then filed more grievances and wrote to Defendants Brown and Fenton, the Health Care Administrators, to no avail.

In an attempt to set forth Plaintiff's efforts to obtain medical attention for his rectal bleeding and pain in chronological order, a summary of Plaintiff's exhibits, to which he refers frequently in the complaint, may be helpful. Exhibit 1-A refers to a medical visit in May 2010 for rectal bleeding and stomach cramps, indicating that Plaintiff was seen by the Health Care Unit (HCU) some time before June 3, 2010, for these problems (Doc. 15, p. 9). Exhibit C indicates that Plaintiff filed a grievance on July 23, 2010, claiming that the HCU did not pick up his stool samples for a fecal blood test as ordered on July 6, 2010 (Doc. 15, p. 13).

Plaintiff's complaint describes several instances beginning on August 19, 2010, when he

---

[1] Although Plaintiff's complaint states that this visit occurred on August 12, 2010, the attached exhibits that appear to describe the same visit state that it took place on August 12, <u>2009</u> (Exhibits 2B and 1C; Doc. 1 pp. 11, 15), and that the subject of the grievance was Plaintiff's dissatisfaction over being charged two co-payments, for the August 12, 2009, visit and another visit on August 13, 2009. At that time, Plaintiff was given Maalox for gas and the nurse determined he did not need to see a doctor.

approached correctional officers Bassett, Gale, and Hoffena (whom Plaintiff has now voluntarily dismissed as Defendants) about his rectal bleeding problems and pain. The complaint does not indicate whether Plaintiff submitted any requests to see a nurse or doctor during this time period.

Returning to the exhibits, Plaintiff's Exhibit D indicates that he saw a doctor on January 24, 2011, and was told to use sitz baths to relieve his symptoms (Doc. 15, p. 15). Exhibit 3 indicates he was seen at the HCU on February 18, 2011, and filed a grievance over that visit complaining of sharp pain in the stomach and rectal area (Doc. 15, p. 10). The staff response to the grievance, however, stated that Plaintiff had not mentioned stomach or rectal pain during that visit. *Id.* Exhibit D-1 references a grievance filed after a March 3, 2011, HCU visit where Plaintiff complains over the hours-long wait he endured before seeing HCU staff (Doc. 15, p. 16). Plaintiff had complained of pain, but the grievance information did not specify further the nature of his medical issue.

In addition, Plaintiff contends that he has developed numerous other health problems as a result of long term consumption of soy food products in the prison meals. These problems include:

> [C]ontinued, constant, chronic, and escruciating [sic] stomach, [sic] abdominal cramps, painful constipation, alternating with debilitating diarrhea, vomiting after eating, sharp pains in the tract [sic], especially after consuming Soy [sic], passing out, heart palpitations, rashes, acne, panic attacks, insomnia, depression and symtoms [sic] of hypothyroidism, low body temp, feeling cold all the time, brain fog, fatigue, wright [sic] gain, frequent infections and Hemmoroids [sic].

(Doc. 1, p. 3-4). An examination of the exhibits shows that Plaintiff had complained to Dietary Manager T. Bryant (whom Plaintiff has voluntarily dismissed as a Defendant) prior to June 9, 2010, about the consumption of soy products, and was referred to the HCU (Doc. 15, p. 17). Plaintiff filed a grievance on July 6, 2010, complaining of stomach issues due to the consumption

of soy, which was denied because Plaintiff had been seen by a doctor regarding this issue (Doc. 15, p. 12).

Finally, Plaintiff's Second Amended Complaint adds three more Defendants. They include former Governor Rod Blagojevich, who Plaintiff claims implemented changes in prison diets in 2002, so that thereafter the diet was "largely based on processed soy protein" (Doc. 15, p. 6). Plaintiff also adds Defendant S. Godinez, the director of the Illinois Department of Corrections, and Defendant Wexford Health Care Services, the employer of Defendants Wahl, Rector, Fenton, Shepard, and Brown. Plaintiff has voluntarily dismissed Defendants Davis, Bryant, Bassett, Gale, and Hoffena.

Plaintiff seeks declaratory and injunctive relief, ordering Defendants to provide him with a thorough medical screening to include evaluation by an outside specialist regarding symptoms of long-term soy consumption, and compensatory and punitive damages.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into two (2) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Deliberate Indifference to Serious Medical Needs**

Plaintiff's allegations that he has suffered from severe rectal bleeding and pain since approximately April 2010, and obtained no effective treatment, raise the question of whether the Defendants' response to his requests for medical attention amounts to a violation of Plaintiff's constitutional rights.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit considers the following to be indications of an objectively serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

Plaintiff's claim that he has had long-term severe rectal bleeding, accompanied by chronic excruciating pain, describes an objectively serious medical need under these criteria.

As to the subjective component of a deliberate indifference claim, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment

claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

Plaintiff sought treatment from Defendants Wahl, Rector, and Shepard, the HCU nurse and doctors, and claims each of them was aware of his frequent rectal bleeding and ongoing severe pain. Whether Plaintiff's complaint sufficiently describes subjective deliberate indifference on the part of these Defendants presents a closer question. Plaintiff claims that he

received no "genuine treatment" for these problems (Doc. 15, p. 2), which might indicate that he merely disagreed with the treatment given. If so, this would not be a constitutional violation. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996); *Ciarpaglini*, 352 F.3d at 331; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001).

Plaintiff's exhibits indicate that he was seen by at least one of the medical provider Defendants for his rectal bleeding in May 2010, and that a fecal blood test was ordered in July 2010, however it appears this test was not completed. According to Plaintiff's grievance, the HCU failed to collect his samples, but according to the grievance response, Plaintiff failed to follow instructions for submitting the samples (Doc. 15, p.13). Plaintiff does not indicate whether he made any further attempts to obtain a fecal blood test. In January 2011, Plaintiff was told by one of the medical providers to use sitz baths, but he claims this did not help his condition (Doc. 15, p. 3 footnote; p. 15). Clearly, Plaintiff obtained some treatment, but the gist of his complaint is that the Defendants' treatment was inadequate to alleviate his painful, chronic condition that persisted for at least nine months.

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes*, 95 F.3d at 591. However, in certain instances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition.

"[A] plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as

to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007). The Seventh Circuit has also found that an Eighth Amendment claim may be stated where a prison doctor persists in a course of treatment known to be ineffective, fails to order further testing or refuses to refer the inmate to a specialist. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer); *see also Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990) (inmate may prevail if he can prove that defendant "deliberately gave him a certain kind of treatment knowing that it was ineffective" (citing *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976)).

In Plaintiff's case, it cannot be determined at this point whether Defendants Wahl, Rector, and Shepard offered "blatantly inappropriate" treatment or refused to perform necessary testing to determine whether Plaintiff's persistent bleeding and pain were indicative of a serious or life-threatening condition, or whether their treatment was within the scope of constitutionally adequate medical care. Construing Plaintiff's complaint liberally, as must be done during preliminary review, the Court concludes that his claims against Defendants Wahl, Rector, and Shepard cannot be dismissed at this time.

However, Plaintiff's claims against Defendants Fenton, Brown, Kisro, Deen, and Wexford Health Care Services are another matter. Defendants Fenton and Brown are in supervisory positions in the Health Care Unit, and Plaintiff's only allegations against them are that they did not satisfactorily respond to his complaints about the nurse and doctors' failure to address his medical needs. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the

deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

Defendant Wexford Health Care Services is a corporation that employs Defendants Wahl, Rector, Shepard, Fenton, and Brown and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Medical Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff makes no allegation that any individual Defendant acted or failed to act as a result of an official policy espoused by Defendant Wexford.

Defendants Kisro and Deen are, respectively, a counselor and grievance officer, and their only role was to consider and respond to Plaintiff's grievances over his medical complaints. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Furthermore, Plaintiff has no right to obtain a favorable resolution of his grievance. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired).

For these reasons, Plaintiff's claims against Defendants Fenton, Brown, and Wexford Health Care Services shall be dismissed without prejudice. The claims against Defendants Deen

and Kisro shall be dismissed with prejudice.

**Count 2 - Soy Diet Complaints**

Plaintiff recites a litany of symptoms he claims to have experienced as a result of consuming soy products while in prison:

> [C]ontinued, constant, chronic, and escruciating [sic] stomach, [sic] abdominal cramps, painful constipation, alternating with debilitating diarrhea, vomiting after eating, sharp pains in the tract [sic], especially after consuming Soy [sic], passing out, heart palpitations, rashes, acne, panic attacks, insomnia, depression and symtoms [sic] of hypothyroidism, low body temp, feeling cold all the time, brain fog, fatigue, wright [sic] gain, frequent infections and Hemmoroids [sic].

(Doc. 15, p. 3-4). Interestingly, Plaintiff's list of soy-related maladies does not include the "chronic excruciating pain and blood streaming from his rectum" (Doc. 15, p. 2), addressed in Count 1 above.

Plaintiff's complaints about the prison diet fall into the category of claims related to the conditions of his confinement. As with the claim discussed in Count 1, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To implicate Eighth Amendment concerns, the conditions complained of must involve serious deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). The second requirement is a subjective element – establishing a defendant's culpable state of mind. *Farmer*, 511 U.S. at 834. To satisfy this element, a plaintiff must demonstrate deliberate indifference to inmate health or safety on the

part of the defendant. *Id.*; *see also Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992).

Other than Dietary Manager Bryant, whom Plaintiff has voluntarily dismissed as a Defendant, Plaintiff does not associate any individual Pinckneyville Correctional Center officials as Defendants in connection with his claim that he has been harmed by the soy products in his diet. Bryant recommended that Plaintiff take up his concerns with the medical staff (Doc. 15, p. 17), and Plaintiff may have done so (Doc. 15, p. 12). However, Plaintiff never states whether he complained to HCU staff about the long list of soy-related symptoms he claims to have had, whether he requested a special diet from a nurse or doctor, or if so, which HCU staff member he talked to, let alone what resulted. Consequently, Plaintiff does not make out a claim that any Defendant was aware of a serious risk to his health due to the consumption of soy, and there is no indication of any causal connection between soy in Plaintiff's diet and the ailments Plaintiff claims to have experienced. Thus, Plaintiff's allegations fall far short of stating a claim for deliberate indifference on the part of any prison official.

Defendants Godinez, the Director of the Illinois Department of Corrections, and Blagojevich, the former Governor, may have had a role in devising or approving prison policies on the use of soy products in prison meals, as Plaintiff claims. However, Plaintiff makes no credible allegation that the dietary policies were made with knowledge of health risks or reckless disregard to the health consequences of soy consumption. More importantly, these Defendants are immune from suit. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't*

*of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same). Therefore, Defendants Godinez and Blagojevich must be dismissed from this action.

Count 2 must be dismissed in its entirety for failure to state a claim upon which relief may be granted; however, the dismissal shall be without prejudice.

**Pending Motions**

Plaintiff has renewed his request for appointment of counsel (Doc. 14), which was previously denied in Doc. 9. There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ... plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). With regard to the first step of the inquiry, Plaintiff indicates that he has made some effort to retain counsel, including contacting a few law firms to request representation. Plaintiff's efforts have been unsuccessful. It is noteworthy that Plaintiff's most recent rejection letter from a law firm is dated in August 2010 (Exhibit G, Doc. 15, p. 21).

With regard to the second step of the inquiry, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.*; *see also Santiago*, 599 F.3d at 762-64. At this point in time, it is difficult for the Court to assess this factor. *See Romanelli*, 615 F.3d at 852 (noting

infancy of case makes it impossible to make accurate determination of *pro se* litigant's ability to litigate case). Plaintiff's claim does not appear to be factually complex. From a legal standpoint, the litigation of any constitutional claim falls in the range of complex. Nevertheless, Plaintiff appears to have adequately articulated his legal issues, and was able to comply with the Court's order to prepare an amended complaint. Future developments may change the Court's mind on whether counsel should be appointed or not. At this early stage and time, though, the Court concludes that Plaintiff appears to be competent to litigate his case. Therefore, Plaintiff's motion for the appointment of counsel (Doc. 14) is **DENIED**, without prejudice.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT TWO** fails to state a claim upon which relief may be granted, and thus is **DISMISSED** without prejudice. Defendants **FENTON, BROWN**, and **WEXFORD HEALTH CARE SERVICES** are **DISMISSED** from this action without prejudice. Defendants **DEEN, KISRO, GODINEZ,** and **BLAGOJEVICH** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **WAHL, RECTOR** and **SHEPARD** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent

authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: July 26, 2011**

    *s/J. Phil Gilbert*
    **United States District Judge**