# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH DAVIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. **3:10-cv-00971-JPG-PMF** |
| DR WAHL, *et al.*, | ) ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is defendant Dr. Rector's motion for summary judgment (Doc. 42) and plaintiff Joseph Davis' response thereto (Doc. 45). For the following reasons, it is RECOMMENDED defendant Rector's motion for summary judgment (Doc. 42) be GRANTED.

### I. Background

On December 2, 2010, the plaintiff, Joseph Davis, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. Davis is an inmate at Pinckneyville Correctional Center ("Pinckneyville"), a correctional facility under the jurisdiction of the Illinois Department of Corrections ("IDOC"). In his complaint (Doc. 1) and subsequent amended complaint on July 19, 2011 (Doc. 15), Davis asserts that he received inadequate healthcare for a rectal bleeding problem while incarcerated at Pinckneyville between April 2010 and August 2010. Davis claims that the inadequate healthcare he received from prison officials at Pinckneyville during that time period violated his Eighth Amendment right in the U.S. Constitution to be free from cruel and unusual punishment.

On July 26, 2011, the Court conducted a preliminary review of the amended complaint pursuant to its authority in 28 U.S.C. § 1915A. *See* Doc. 16. In that order, the Court dismissed seven of the ten defendants identified in the amended complaint. *See id*. at 14. The Court also

1

found that Davis stated a claim against three defendants, including defendant Dr. Rector. *See id*. at 9. On December 2, 2011, defendant Rector filed the instant (Doc. 42) motion for summary judgment.

## II. Discussion

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. The Court will first summarize the applicable law and will then discuss the relevant dispute in the (Doc. 42) motion for summary judgment.

### A. Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with the lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Finally, "[e]xhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC has a three-step process that prisoners under their control are required to follow in order to exhaust administrative remedies. For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*. The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the [dispute]." *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer. *See* 20 Ill.Admin.Code § 504.830. The Chief Administrative Officer typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id.* The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the Chief Administrative Officer at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. The ARB typically makes a final determination within six (6) months after receipt of the appealed grievance. *See id*. With regard to prisoners under the control of the IDOC, administrative remedies may be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues before the merits of the substantive claims may be considered. *See Pavey*, 544 F.3d at 740-42. If the Court finds that the prisoner exhausted his administrative remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits." *See id*. at 742. If the

Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

> (a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;
> (b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or
> (c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### B. **Defendant Rector's Motion for Summary Judgment (Doc. 42)**

Defendant Rector argues that Davis has never fully exhausted his administrative remedies with regard to his claim against her because there is no record of a fully exhausted grievance naming or describing her, as required by the IDOC regulations on exhaustion. In support, defendant Rector directs the Court to the affidavit of a custodian of records for the ARB. *See* Doc. 43-1 at 1. The custodian of records attests that the ARB had sixty-nine (69) pages of records regarding the plaintiff. *See id*. Defendant Rector attached twenty-four (24) of those pages as an exhibit to her motion for summary judgment. *See id*. at 2-25. Those grievances are dated as follows:

1) April 19, 2010. *Id*. at 2.
2) July 6, 2010. *Id*. at 5
3) July 23, 2010. *Id*. at 9.
4) January 20, 2011. *Id*.at 16.
5) January 31, 2011. *Id*. at 17.
6) February 13, 2011. *Id* at 13.
7) February 21, 2011. *Id*. at 20.
8) March 3, 2011. *Id*. at 23.

Defendant Rector correctly points out that only the only grievance that arguably even attempts to identify defendant Rector is the February 13, 2011 grievance. The February 13, 2011 grievance complains as follows:

4

> I submitted [a] request to nurse sick call [sic] because I'm experiencing sharp pain in my stomach and rectum. On February 13, 2011, the nurse at the health care unity told me that I still had Metamucil and hemorrhoid cream and there was nothing she could do for me. I'm still in pain and don't know what else to do. [I request] that I be seen by a doctor because I'm still in pain.

Doc. 42-1 at 13. Defendant Rector further argues that the February 13, 2011, grievance does not name or describe defendant Rector, and, as a result, Davis has failed to "provide the institution with enough factual detail to provide notice to the alleged culprit and or to handle the grievance internally." Doc. 43 at 4.

In response, Davis concedes that the February 13, 2011, grievance is the only grievance that he filed in an attempt to exhaust his administrative remedies as to defendant Rector. *See* Doc. 45 at 3. Davis attests that he did not identify the nurse by name in the February 13, 2011 grievance because he did know the name of the nurse at the time of filing the grievance. *See id*. However, it should be noted that this statement conflicts with the fact that this lawsuit was filed on December 1, 2010 (Doc. 1), and Davis named defendant Rector as a defendant in this case. Davis must have been aware of defendant Rector's identity at that time. The grievance in question was filed only a few months later.

The fact that the identity of defendant Rector was likely known to Davis at the time of the February 13, 2011, grievance is only the tip of the iceberg regarding Davis' problems with exhaustion as to defendant Rector. More importantly, the allegations of both the complaint and the amended complaint only cover a time period beginning sometime in April of 2010 and ending sometime shortly after August of 2010. *See* Docs. 1, 15. The relevant allegations as to defendant Rector are summarized as follows:

5

> 4. On April 20, 2010, while incarcerated at Pinckneyville Correctional Center, this plaintiff had an occasion to submit a number of "Sick Call" request slips requestin[g] to be seen by medical personnel regarding continued, severe, chronic and excessive bleeding from his rectum during each bowel movement.
> 5. The plaintiff brought this severe problematic condition to the immediate attention of Defendants Wahl, *Rector*, and Shepard, and without the benefit of a thorough examination, this plaintiff was informed that follow-up work would be done. …
> 7. On August 12, 2010, …
> 9. On August 19, 2010, …
> 10. Shortly thereafter, …

Doc. 15 at 2-4 (emphasis added). Specifically as to defendant Rector, the only allegation against her in the entire complaint is closely related to sick calls occurring sometime around April 20, 2011. *See* Doc. 15 at 2 ¶ 4, 5. The allegations contained in the February 13, 2011, grievance fall well outside of that time period. Accordingly, Davis failed to exhaust his administrative remedies with regard to the allegations against defendant Rector contained in his complaint.

In addition, the fact that Davis only attempted to exhaust his administrative remedies as to defendant Rector after he filed this lawsuit is fatal to his claim in this case. As noted above, this lawsuit was filed on December 2, 2010. Doc. 1. By his own admission, the only grievance that the plaintiff attempted to file against defendant Rector is a grievance dated February 13, 2011. *See* Doc. 45 at 3. Therefore, the plaintiff filed attempted to exhaust his administrative remedies against defendant Rector after he filed this lawsuit. The PLRA provides that "[n]o action *shall be brought* … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The Seventh Circuit has strictly adhered to the principle that exhaustion must occur before suit is filed. *See, e.g., Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (providing that a prisoner cannot file suit and then exhaust his administrative remedies while suit is pending and citing *Perez*, 182 F.3d 532).

### III. Conclusion

For the forgoing reasons, it is RECOMMENDED that defendant Rector's motion for summary judgment (Doc. 42) be GRANTED as follows:

It is RECOMMENDED that defendant Dr. Rector be dismissed from this case.

If this Report and Recommendation is adopted in its entirety, this case will continue against defendants Dr. Wahl and Dr. Shepard.

**SO RECOMMENDED.**

**DATED: January 26, 2012.**

*/s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**