IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH DAVIS, #K-60509,

    Plaintiff,

vs.

NURSE WAHL, et al.,

    Defendants.

Case No. 3:10-CV-00971-JPG-PMF

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Jill Wahl's motion for summary judgment (Doc. 111). Plaintiff Davis has filed his response[1] (Doc. 114). Wahl has also filed her reply (Doc. 116). Davis has filed a sur-reply. (Doc. 117). For the following reasons, the Court grants Wahl's motion for summary judgment.

**Background**

Davis is currently incarcerated at Pinckneyville Correctional Center. Defendant Wahl is employed by Wexford Health Sources, Inc., as a traveling physician. Wahl, among others, treated Davis while he was incarcerated in Pinckneyville during 2010 and 2011. This Court will relate the facts as they pertain to Wahl.

On July 19, 2011, Davis filed his Renewed Second Amended Complaint pursuant to 42 U.S.C. § 1983 asserting that defendants were deliberately indifferent to his serious medical needs when they failed to provide adequate care for Davis's "continued, severe, chronic and excessive bleeding from his rectum during each bowel movement" (Doc. 15, pg. 2). This Court divided Davis's pro se complaint into two counts, Count One being "Deliberate Indifference to Serious

---

[1] The Court notes that the response was entitled "Plaintiff Reply to Defendant Motion for Summary Judgment," however the Court will construe this as a response.

Medical Needs," and Count Two being "Soy Diet Complaints." (Doc. 16). The Court then dismissed Count Two. *Id.*

Davis makes the following claims in his complaint. On April 20, 2010, Davis submitted sick call requests, asking to be seen regarding "severe, chronic, and excessive bleeding from his rectum during each bowel movement." (Doc. 15, pg. 2). Davis brought his "severe problematic condition" to the attention of Wahl and the other Defendants and did not receive a "thorough examination." *Id.* Months passed "without any genuine treatment," and Davis experienced "chronic escruciating [sic] pain and blood streaming from his rectum" each time he attempted a bowel movement or passed gas. *Id.*

Davis states that he went to the prison health care facility and was examined by Wahl on August 12, 2010. On that date, Wahl told Davis "he had 'gas' and didn't need to see a Doctor." (Doc. 15, pg. 3). However, a Grievance Officer's Report attached to Davis's complaint suggests that this incident occurred exactly one year earlier and with an unidentified nurse. (*See* Doc. 15, pg. 14). The report states, "[g]rievant claims he was seen on NSC on 8/12/09 and after explaining his symptoms to the nurse (unidentified) she said he had gas and didn't need to see a doctor." *Id.* The report also states, "[p]er C. Fenton '[t]he nurse followed protocol per your reports to her. You stated to her you had gas, not pain and were given Maalox to assist with your issues.'" *Id.* It seems that this incident occurred on August 12, 2009, and not August 12, 2010, as Davis states in his complaint. Therefore, although Davis argues that prison officials were deliberately indifferent to his medical needs in 2009 and 2010, (*See* Doc. 114, pg. 5), Davis has not alleged, and the record does not reflect, that Davis sought medical attention for treatment of his rectal bleeding during 2009.

In their various filings with this Court, Davis and Wahl agree on the following facts. Davis has suffered rectal bleeding and pain since April of 2010. On April 19, 2010, Davis noticed he had rectal bleeding. Wahl examined Davis on April 20, 2010. The prison medical records show on this date that Wahl noted Davis might suffer from rectal prolapse.[2] (*See* Doc. 112-3, pg. 4). Wahl examined Davis again on April 23, 2010, and prescribed suppositories, blood work, and stool tests. The suppositories helped to stop Davis's rectal bleeding at times. On May 26, 2010, Wahl examined Davis, and Davis tested positive for H. Pylori, an infection.[3] Wahl prescribed Prilosec[4], bismuth subsalicylate[5], and antibiotics. On July 6, 2010, Wahl found that Davis had no blood in his stool and ordered more stool tests. On August 25, 2010, Wahl examined Davis and found that Davis tested negative for an H. pylori infection. In September of 2010, Davis told a nurse that Wahl had previously suggested Davis have a colonoscopy. In September of 2010, Dr. Shepherd examined Davis, found that Davis tested positive for H. pylori, and prescribed Zantac[6] and hemoccult tests[7]. In November of 2010, Davis again experienced rectal bleeding. Shepherd prescribed various medications and sitz baths. Davis concedes that sitz baths provide him relief for his condition. Wahl last treated Davis on January 4, 2011.

---

[2] "Rectal prolapse occurs when the last several inches of the large intestine (the rectum) becomes abnormally stretched and protrudes from the anus." Mayo Clinic, http://www.mayoclinic.com/health/rectal-prolapse-surgery/MY00312 (last visited Nov. 12, 2013). "In its early stages, rectal prolapse may be treated with stool softeners, suppositories and other medications. But most people need surgery to repair rectal prolapse." Mayo Clinic, http://www.mayoclinic.org/rectal-prolapse/treatment.html?mc_id=comlinkpilot&placement=bottom (last visited Nov. 14, 2013).

[3] H. pylori infections may include symptoms such as an ache or burning pain in the abdomen, nausea, vomiting, severe or persistent abdominal pain, difficulty swallowing, or bloody or black tarry stools. Mayo Clinic, http://www mayoclinic.com/health/h-pylori/DS00958/DSECTION=symptoms (last visited Nov. 12, 2013).

[4] Prilosec contains the active ingredient omeprazole. "Sometimes omeprazole is used in combination with antibiotics… to treat ulcers associated with infection caused by the H. pylori bacteria…." Mayo Clinic, http://www mayoclinic.com/health/drug-information/DR601471 (last visited Nov. 14, 2013).

[5] "Bismuth subsalicylate is used to treat diarrhea in adults and teenagers. It is also used to relieve the symptoms of upset stomach, such as heartburn, indigestion, and nausea in adults and teenagers." Mayo Clinic, http://www mayoclinic.com/health/drug-information/DR601893 (last visited Nov. 14, 2013).

[6] Zantac can be used to treat, among other things, heartburn, acid indigestion, and sour stomach. Mayo Clinic, http://www mayoclinic.com/health/drug-information/DR601907 (last visited Nov. 14, 2013).

[7] Hemoccult tests are used to "detect blood found in the stool…." Dartmouth-Hitchcock, http://patients.dartmouth-hitchcock.org/colorectal/hemoccult_test.html (last visited Nov. 14, 2013).

On June 2, 2011, Dr. Schmidt examined Davis. (*See* Doc. 112-3, pg. 23). Schmidt found that Davis's "examination was unremarkable" and that it was "unclear what is causing [Davis's] problem." *Id.* Schmidt recommended that Davis have stool studies, a blood screen, and possibly a colonoscopy. *Id.* On December 1, 2011, Dr. Mutch examined Davis. (See Doc. 112-3, pg. 25). Mutch found that Davis had full-thickness rectal prolapse. *Id.* Mutch recommended that Davis "undergo a colonoscopy" and then surgery for his prolapse, specifically "a sigmoid resection and rectopexy[8]." *Id.* On December 5, 2011, Davis signed a Medical Services Refusal form, refusing surgery to correct his prolapse. (*See* Doc. 112-3, pg. 24). Davis still has not had the surgery but concedes that he may have the surgery whenever he chooses to do so.

On June 21, 2013, Defendant Wahl filed her motion for summary judgment (Doc. 111). In Wahl's motion, Wahl makes the following claims to support her argument that she was not deliberately indifferent to Davis's medical needs. Wahl "provided adequate (if not good) medical care and treatment to the plaintiff for complaints of rectal bleeding and other stomach pains on at least 8 occasions." (Doc. 111, pg. 3). Wahl prescribed "suppositories, antibiotics, and medications to ease [Davis's] stomach complaints, various blood and stool tests, and sitz baths." *Id.* Davis admitted that the suppositories and medications helped. *Id.* Davis "was sent to see an outside gastrointestinal specialist who recommended more blood and stool tests and a colonoscopy, both of which had been ordered or recommended by Dr. Wahl." *Id.* The specialist found Davis's "physical examination was unremarkable" and that it was "unclear what is causing

---

[8] In a sigmoid resection and rectopexy, "[t]he surgeon makes an incision in the abdomen and removes the sigmoid colon, the part of the large intestine closest to the rectum and anus. The rectopexy procedure anchors the rectum to a bony structure attached to the lower spine and pelvis (sacrum). In most cases, it is possible to perform this operation using minimally invasive surgery, which results in smaller incisions and a shorter hospital stay than does conventional surgery." Mayo Clinic, http://www mayoclinic.org/rectal-prolapse/treatment.html?mc_id=comlinkpilot&placement=bottom (last visited Nov. 14, 2013).

his problem." *Id.* Finally, Wahl notes that while a colo-rectal surgeon recommended to Davis that he have surgery, Davis refused surgery and has continued to refuse it. *Id.*

On July 23, 2013, Plaintiff Davis filed his response (Doc. 114) and a memorandum in support of his response (Doc. 115). In his memorandum, Davis makes the following arguments in an effort to show that Wahl was deliberately indifferent to his serious medical needs. Wahl failed to prescribe pain medication. Wahl denied Davis his sitz bath treatments that Dr. Shepherd had previously prescribed, and instead told Davis to perform his sitz baths in his cell using a washcloth and hot water. Davis's cell was not clean enough for him to take a sitz bath, and Wahl failed to prescribe cleaning supplies with which to clean the cell. Davis's cell did not have heat or hot water at this time. Davis states that by telling him he must give himself a sitz bath in his cell, "[Wahl] disregards an excessive risk to [Davis's] health and safety…." (Doc. 115, pg. 6). Davis states that he "had to filed [sic] grievances on the defendants to get the sitz baths and medical treatments." (Doc. 114, pg. 3). Finally, Davis seems to make the argument that Wahl should have sent him to a rectal specialist sooner. (*See* Doc. 114, pp. 2-3).

On July 30, 2013, Wahl filed her reply to Davis's response (Doc. 116). Wahl correctly points out that Davis alleges that he was denied care in 2009 and 2010 even though he concedes that his rectal bleeding did not begin until April 19, 2010. Wahl states that she first examined Davis for his rectal bleeding on April 20, 2010, and that she last examined Davis on January 4, 2011. Wahl argues that she cannot be held liable for any deliberate indifference that occurred outside this timeframe. Wahl also argues that the medications she prescribed helped Davis's rectal bleeding and stomach pain.

Davis has filed a sur-reply. However, "[u]nder no circumstances will sur-reply briefs be accepted." S.D. Ill. L.R. 7.1(c). Therefore, the Court strikes the sur-reply (Doc. 117). The Court will now consider whether Wahl is entitled to judgment as a matter of law.

**Analysis**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

The Eighth Amendment imposes liability on prison officials who "intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmate's health." *Gonzalez v. Feinerman*, 663 F.3d 311, 313-14 (7th Cir. 2011) (citing *Farmer v.*

6

*Brennan*, 511 U.S. 825, 837 (1994)). Accordingly, Davis must establish he suffered from an "objectively serious medical condition" and medical officials "were aware of the serious medical need and were deliberately indifferent to it." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

In Wahl's motion for summary judgment, Wahl does not dispute whether Davis suffered from an "objectively serious medical condition," but rather Wahl focuses her arguments as to the deliberate indifference prong. Therefore, the Court will only address whether Wahl was deliberately indifferent to Davis's rectal bleeding and pain. Davis can establish that Wahl was deliberately indifferent if Wahl's treatment was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.'" *King*, 680 F.3d at 1018-19. Davis may also recover if he can prove Wahl "deliberately gave him a certain kind of treatment knowing that it was ineffective . . . as a way of choosing 'the easier and less efficacious treatment.'" *Kelley v. McGinnis*, 899 F.2d 612 (7th Cir. 1990) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976)). However, medical malpractice or a "mere disagreement with a doctor's medical judgment" will not establish deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citing *Estelle*, 429 U.S. at 106); *see also Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)).

Looking at the evidence in the light most favorable to Davis, it is clear that Wahl was not deliberately indifferent to Davis's rectal bleeding and pain. Davis noticed his rectal bleeding on April 19, 2010, and Wahl examined Davis the very next day. On April 23, 2010, Wahl prescribed suppositories as well as blood and stool tests. Wahl treated Davis's rectal bleeding with various medications, and Davis reported that the medications helped to stop his rectal

7

bleeding at times. Upon discovering that Davis had tested positive for an H. pylori infection, Wahl prescribed antibiotics to treat the infection, and even conducted a follow-up examination of Davis to ensure that the infection was gone, which it was. Therefore, not only was Wahl attentive to Davis's medical needs, but Wahl also gave Davis effective treatment. Davis has not produced evidence that Wahl made a substantial departure from accepted professional judgment, practice, or standards. In fact, the evidence suggests otherwise. One physician examined Davis and found that it was "unclear" what was causing his rectal bleeding while another physician recommended the same course of treatment as Wahl; that Davis undergo a colonoscopy. While one physician suggested surgery, Davis refused surgery and continues to do so.

As to the denial of Davis's sitz baths, Wahl instructed Davis to conduct these in his cell. However, after learning that Davis claimed he lacked hot water in his cell, Wahl reinstated Davis's sitz baths so that he could take them in the healthcare unit again. Therefore, she was not indifferent to his needs in this respect.

Next, the Court will address Wahl's failure to prescribe pain medication. Davis does not need to demonstrate that Wahl literally ignored his pain. *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000), rather Davis must show that Wahl's responses to Davis's pain "were so plainly inappropriate as to permit the inference that [Wahl] intentionally or recklessly disregarded [Davis's] needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Wahl did not prescribe pain medication to Davis, however, the prison medical records show that during the period Wahl treated Davis, he only made complaints of abdominal and stomach pain. Wahl gave Davis medications to help with his abdominal discomfort such as Prilosec and bismuth subsalicylate. Additionally, when Wahl discovered that Davis tested positive for H. pylori, an infection which can cause abdominal pain,

8

Wahl effectively treated Davis for the infection. Moreover, Davis concedes Wahl's treatment provided him relief.

Finally, the Court will address Davis's argument that Wahl delayed Davis's access to a rectal specialist. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citing *Estelle,* 429 U.S. at 104-05). "A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) (citing *Estelle,* 429 U.S. at 103–04); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (explaining that inmates are not entitled to demand specific care). The record does not show that Wahl delayed Davis's access to an outside specialist, but rather that Wahl chose a course of treatment for Davis, and Davis reported improvement from that treatment. Furthermore, a gastrointestinal specialist later examined Davis and recommended the same course that Wahl recommended, blood and stool tests as well as a colonoscopy. Finally, while another specialist did recommend surgery, Davis refused the surgery. In conclusion, the Court finds that Wahl did not deny or delay Davis's access to a rectal specialist.

For these reasons, the Court concludes that Wahl was not deliberately indifferent to Davis's rectal bleeding and Wahl is entitled to judgment as a matter of law. Because Wahl is the only remaining Defendant, the Court dismisses this case.

## Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Wahl's motion for summary judgment (Doc. 111);
- **DISMISSES** Wahl from this case;

- **STRIKES**, Davis's sur-reply (Doc. 117) from the record; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** November 20, 2013

s/ J. Phil Gilbert
**J. PHIL GILBERT
DISTRICT JUDGE**
